No. 61.—CALVIN LEARY, plaintiff in error, vs. HARDY DURHAM, defendant in error.

[1.] Defendant, by deed, sold land in fee to Joel Lofton, and bound him-
self, his heirs, &c. to warrant and forever defend, the right and title thereof,
to the purchaser, against the claim of himself and all other persons whomsoever.
Joel Lofton made a similar conveyance and warranty to Calvin Leary, the
plaintiff: *Held,* That an action may be maintained by Leary, as assignee,
against Durham, for a breach of the covenant, by showing that dower has
been assigned out of the premises, since Leary came into possession, in favor
of the widow of the grantor of Durham ; notwithstanding the record failed to
disclose that a writ of possession had issued in behalf of the Dowager.

Covenant. Tried before Judge SCARBOROUGH, in Twiggs Su-
perior Court, April Term, 1848.

This action was predicated upon a covenant of warranty con-
tained in a deed of conveyance of certain lands from the defen-
dant in error to one Joel Lofton, who, by a subsequent deed, con-
veyed the premises to the plaintiff in error, with warranty. The
covenant of warranty contained in the deed from Durham to Lof-
ton, is in the following words, to wit: " And the said Hardy Dur-
ham, for himself, his heirs, executors and administrators, the said
bargained premises unto the said Joel Lofton, his heirs and as-
signs, will warrant, and forever defend the right and title thereof,
against themselves, and against the claim of all other persons
whatever." The breach alleged was in the usual form.

Upon the trial it was shown, that the lot of land number 59, in
the 10th District of Houston county, being one of the tracts of
land conveyed, was subject to the claim of dower of Mrs. Bras-
well, as the late widow and relict of Robert A. Beall, deceased.
That her dower in that lot had been admeasured and laid off to·
her under a writ of dower regularly sued out by the commission-
ers appointed for that purpose, and which was made the judg-
ment of the Court.

The deeds from Durham to Lofton, and from Lofton to Leary,
were read in evidence to the Jury. It was also proven upon the·
trial, that Durham was informed of the application for dower·
whilst the application was pending, and before final judgment
thereon.

The plaintiff then proved the value of the dower laid off and

assigned, and closed his case.   No testimony having been offered on the part of the defendant, the Court below proceeded to charge the Jury, that the evidence submitted was not sufficient to authorize a recovery, when the plaintiff submitted to a non-suit, with leave to move to set aside the same, and reinstate the case upon the following grounds:

1st.  Because the Court erred, in determining that a judgment of a Court accepting and approving the acts of commissioners appointed to lay off and assign to the widow of the late Robert A. Beall, her dower in said tract of land, and making the same the judgment of the Court, was not of itself sufficient evidence of a breach of covenant of warranty, in the deed from Durham to Lofton, for said lot of land, without proving also an actual ouster or eviction of the plaintiff, who was tenant in possession, and defendant in said suit for dower, or proof of his surrendering the dower after said judgment on said suit for dower.

2d.   Because the Court erred in determining, that a judgment of a Court of competent jurisdiction unreversed, awarding an eviction of a defendant in a suit for dower, was not sufficient evidence of an ouster and eviction, without proof of surrender of dower after judgment therefor, to constitute a breach in a deed of warranty of title against all claims, without proving an actual ouster and eviction of the defendant in a suit for dower, or the surrendering up by him of the dower after a judgment against him for that purpose.

Upon hearing argument, the Court below over-ruled said motion, upon the following grounds:

1st.   Because the evidence in said case showed no eviction proven; a judgment recovered, not being sufficient to prove it to the Jury on the trial before non-suit, nor was any evidence of that sort offered.

2d.   That the deed of warranty from defendant, contains no warranty against incumbrances, and that dower is an incumbrance.

3d.   That there has been proven no breach of covenant of warranty of title in fee, the fee being still in plaintiff, with an incumbrance of dower for life.

4th.   That the proof given in said cause, showed nothing but an incumbrance, and covenants against incumbrances do not run with the land; and hence assignee cannot sue in this action under the deed and other proofs in this cause.

Leary *vs.* Durham.

To which decision of the Court below and the grounds thereof, the counsel for the plaintiff excepted, and assign the same for error.

KELLY & GILES, for plaintiff in error.

S. T. BAILEY, for defendant in error.

JOHN M. GILES, for plaintiff in error, made the following points:

1. The Court erred in deciding that the evidence showed no eviction ; a judgment recovered not being sufficient evidence of an eviction.

The evidence offered by the plaintiff in the Court below, to prove a breach of the covenant sued on, was an exemplification of a petition for assignment of dower in the Superior Court of Houston county, by Duke and wife, and such proceedings subsequently had, as are usual and according to the Statutes of the State, and proof of notice to the defendant of the pending of the application for dower.

The peculiar nature of the proceeding for assignment of dower, render, a subsequent dispossession in fact by writ of possession, unimportant. Commissioners are appointed, who with a surveyor enter upon the land, admeasure, lay off and assign the dower. They make a return which, if approved, is made the judgment of the Court, and this judgment is declared to be *final and conclusive* between the parties. *Prince's Digest*, 459. Is not the tenant in dower effectually and legally put in possession of her estate in the land, by the entry and assignment of the commissioners, subsequently confirmed by the judgment of the Court ? Is not the tenant in possession of the land, ousted by the entry and survey of the commissioners ? Is not the land used and taken possession of by them, and is it not *in custodia legis*, until the final determination of the application ?

But even if these proceedings did not actually, as well as legally oust the plaintiff, yet there are some respectable authorities which hold that actual expulsion from the land, by writ of possession, need not be shown, even where a recovery has been had in ejectment, but that the judgment of recovery is sufficient to prove a breach. *Williams vs. Witherbee*, 1 *Aikin's R.* 233, *cited* 2

*Greenl. Ev.* §244.    *Hauton vs. Buckner*, 4 *Dana's K. R.* 254, cited 4 *Kent*, 479, *n. b. Drury vs. Shumway*, 1 *Chip.* 110, cited 1 *U. S. Dig.* 687, *Sec.* 308.

Most of the decisions, I apprehend, which hold that an actual dispossession by writ of *hab. fac. poss.* is necessary, were made in suits upon the covenant, for quiet enjoyment. *Kortz vs. Carpenter*, 5 *Johns. R.* 120. *Kerr vs. Shaw*, 13 *Johns. R.* 236.

*Waldron vs. McCarty*, 3 *Johns.* 472, and others, are cited to support the doctrine that an actual eviction is necessary to constitute a breach of the covenant of warranty, when they are decisions upon the covenant of quiet enjoyment.

But the covenant of warranty in this case, is of the *right and title.*

In South Carolina it has been settled that neither covenant is equivalent to a covenant of seisin or of title.

But though that view of the covenant may not be correct, yet the covenant, in express terms, binds the covenantor to *warrant and defend the right and title* against the claim of all persons whomsoever. This certainly goes farther than a mere warranty of possession. It warrants the possession, the right of possession, and the right of property. Now, in this case, by a proceeding in a Court of competent jurisdiction, of which Durham had notice, a claim of dower has been established, and the right of possession, and the right of property for life, fixed in the applicant by a final and conclusive judgment. Durham has acquiesced in this proceeding—at least he has not stepped forward and prevented this claim from being established, as his covenant bound him. Is not the covenant broken? Of what avail is it, that (admitting it to be the fact) Leary has a mere naked possession, divested of all right and title, and which may at any time be determined, if it has not already been determined?

Will the Court require him to hold on to the shadow, (when the substance is gone,) until he is put out by the strong arm of the law? Why require him to push his defence to the *ultima thule* of litigation? It is upon the supposition that Durham, who has not defended the right of title before judgment, but has allowed judgment to go against his covenantee, will at last come forward and save his right and title, just as it is in its last agony? But such a supposition is unreasonable. It is now too late to defend the claim of dower. Is it, on the other hand, reasonable to suppose

that the parties, who, after so much pains, and after so long delay, have the estate they have been seeking, within their grasp, will now abandon it? Will they dash to the ground the cup, just as they have brought it to their lips? Will they surrender the right of possession, and the right of property which they have contended for successfully, merely because they have not actual possession, when it is in their power to obtain it?

But it will be remarked, that in those cases where it has been held necessary, in suits upon covenants of warranty, to prove the execution of the writ of possession, in addition to the judgment of recovery, the judgment was in ejectment, which was not conclusive upon the right or title. It only gave the lessor a present right of entry—but a subsequent action might have been brought by the party evicted, and the former judgment would be no bar. But our case is different; we seek to prove a breach by showing a claim of title which has been fixed, finally, and conclusively, in the claimant. Our right and title to the estate, recovered by the claimant, is, beyond redemption, lost.

2. The Court erred in deciding that the deed contained no covenant against incumbrances.

Chancellor Kent speaks of the covenant of general warranty, as the sweeping covenant, and seems to think it includes the substance of all the others. 4 *Kent.*

Are not incumbrances claims against the right and title?

The case of *Jones vs. Gardner*, 10 *Johns. R.* 276, was upon a covenant to convey title. The Court held that it bound the covenantor to convey the *whole* title, free from all valid liens, claims, and *incumbrances.* Must not the covenant warranting the right and title be construed to mean a title, free from incumbrances and liens—especially as the covenant must be taken most strongly against the covenantor.

In the case of *Falliard vs. Wallace*, 2 *Johns. R.* 395, the term " claims" seemed to be construed to include incumbrances.

3. The Court erred in deciding that the title to dower was a mere incumbrance, and that a recovery of dower was no breach of the covenant of warranty of title in fee, as the title in fee still remains in the plaintiff.

The case of *Jones vs. Gardner*, 10 *Johns.* 276, was a covenant to convey the title; *held*, a breach that the wife of the covenant-

or had a claim of dower in the land, which was not extinguished or relinquished.

It is true, it is said, that dower is an incumbrance, in 2 *Greenl. Ev.* but it is there said that an outstanding, paramount title is a breach of the covenant against incumbrances.  *Ibid.*

But dower is certainly not an incumbrance, according to the legal definition of the term.  *See Hollhouse's L. Dict. Title, Incumbrance,* where incumbrance is defined to be a burden or debt, charged upon an estate.

Dower is a freehold title to land.  It is an estate carved out of the fee, and is a part of it, leaving an estate in reversion, and it takes the two to make the whole fee.

Why, according to the Judge's idea, as a portion of the fee remained in the plaintiff after dower was recovered, there could be no breach of the warranty of right and title, unless the whole title is recovered.  It is a rule in Law, as well as in Mathematics, that the whole includes a part.  This is undoubtedly applied to a covenant of warranty, when part of the land is recovered—this is held to be a breach of the covenant.  A recovery under an unexpired term, is a breach.  *Rickert vs. Snyder,* 9  *Wend.* 416.

Would it not be absurd to hold that a recovery in fee of one tenth part of the premises conveyed, would be a breach of the covenant of warranty, and yet hold that recovery of one third for life was no breach ?

4. The Court erred in deciding that the covenant, in this case, if it was a covenant against incumbrances, did not run with the land.

It is true, covenants against incumbrances in the present tense, being broken as soon as made, do not run with the land.  But if this be a covenant against incumbrances, it is a covenant to warrant and defend against them.  It is not a covenant that there are no incumbrances, as is usual with a special covenant against incumbrances.  But it binds the covenantor to defend against them.

It is therefore prospective, and until broken, passes with the estate.  Whoever owns the estate may sue upon the covenant.

The covenant is to warrant and defend the right and title to the covenantee, his heirs, and *assigns.*  When the land has been conveyed, the purchaser becomes an assignee of the covenantee, and why may he not sue upon the covenant which directly names him.

S. T. Bailey, for defendant in error.

On a covenant of warranty there must be an eviction or ouster proven. 2 *J. R.* 1.  1 *J. R.* 122.  7 *Ib.* 258, 376.  3 *Serg. &amp; Rand.* 364.  4 *Mass. R.* 352.

But the assignee cannot sue.  2 *J. R.* 1, 5.

The plaintiff may prove that he went out of possession, and yielded to a paramount title voluntarily.  4 *Mass. R.* 349.  17 *Ib.* 586.

But the burthen of proof is on the warrantee.  4 *Mass. R.* 349.

When there are express covenants, none can be implied.  11 *J. R.* 122.

Where a covenantee sues on a covenant for quiet enjoyment, or general warranty, he must show an eviction or disturbance, for it goes to the possession, and not to the title.  3 *J. R.* 471.  5 *Ib.* 120.  8 *Ib.* 198.  15 *Ib.* 483.  7 *Wend. R.* 281.  2 *Dev.* 388.

Covenant of seisin, and of a right to convey, and against incumbrances, are personal covenants, not running with the land, or passing to the assignee ; for if not true, there is a breach of them, as soon as the deed is made, |and they become *choses in action,* which are not technically assignable.  But covenants of warranty, and for quiet enjoyment, are prospective, and actual ouster and eviction are necessary to constitute a breach.  4 *Kent Com.* 471.

*By the Court.*—Lumpkin, J. delivering the opinion.

On the 27th of August, 1833, Hardy Durham, by deed of indenture, conveyed in fee, to Joel Lofton, certain real estate therein described.  The vendor covenanted, "for himself, his heirs, executors and administrators, the bargained premises unto the vendee, his heirs and assigns, to warrant, and forever defend, the right and title thereof, against himself and against the claim of all other persons whomsoever."  On the 16th day of April, 1836 Joel Lofton sold and conveyed, in fee, said land to Calvin Leary, the plaintiff in error, with similar warranty.  In 1843, Duke W. Braswell, and Caroline, his wife, formerly Caroline Beall, widow and relict of Robert A. Beall, deceased, the foeffor of Durham

applied for dower in the premises, which was admeasured and set off to them. The return of the commissioners appointed to lay off dower, was made the judgment of the Court at its adjourned term in December, 1844; and a writ of possession directed to be issued by the Clerk, upon the application of the demandants. It was in proof, that the injury done the land, amounted to some four or five hundred dollars; and that Durham had notice of the pendency of the proceeding, to obtain dower. Leary brought an action of covenant against Hardy Durham, in Twiggs county, which came on for trial before Judge Scarborough,. Spring term, 1848. The Court ordered a non-suit on the follow-grounds, to-wit:

1st. There was no eviction.

2d. There was no breach of the warranty of title in fee, the fee being still in the plaintiff, with a mere incumbrance of dower, for life.

3d. There was no warranty in Durham's deed, against incumbrance, and dower is an incumbrance.

4th. The testimony showed nothing but an incumbrance, and covenants against incumbrances do not run with the land; and consequently, the action could not be maintained by Leary, as assignee.

To this decision, and to the refusal of the Court to reinstate the case, counsel for the plaintiff excepted.

[1.] The covenants in these deeds, are of very general use, in conveyances of land in this State, where almost every man is his own scrivener. It is important, therefore, that their meaning be properly defined and fixed by this Court, that all may understand their nature; that is, the liability of the grantor thereon, and the security of the grantee. No question which has yet come before us, has elicited more learning from the bench and bar of this country. The single case of *Foote vs. Burnet*, 10 *Ohio R.* 317, with the very able note appended by the Reporter, has almost exhausted the subject. I shall not attempt, on the present occasion, to become even a gleaner in this wide-spread and inviting field. It will be my object, as the organ of this tribunal, simply to announce what the law is respecting this doctrine, as understood and long practised upon by the people and profession in Georgia, and from which we do not feel at liberty to depart. We hold with the Supreme Court of one of our most enlightened sis-

ter States, in reference to this very matter, that in questions of property *certainty* is of incalculable importance. And that where a rule of law has been firmly established for half a century, at least, though originally, perhaps, on mistaken or erroneous principles, and no greater evil is to be apprehended from an adherence to it, than may be expected from a departure from it, that *stare decisis* ought to be our motto. *Furman vs. Elmore*, 2 *Nott and McCord*, 189.

The covenants in these deeds, like most others in use in this State, are drawn in literal accordance with the form prescribed by the Legislature in 1819. *Geo. Jus.* 401. The question, then, first and mainly to be determined, is, what is the construction of covenants couched in terms like these ? Their language is exceedingly broad and comprehensive, and contains, in the opinion of this Court, every thing which is necessary to protect the purchaser, in the full, free and uninterupted enjoyment of his property, from all lawful claims, of whatever kind or character, whether they interfere with the fee, or suspend, or disturb the present possession only. Such, we believe to be the universal understanding and intention of the parties to these covenants. It is the duty of all Courts, not only to construe deeds most strongly against the grantor, but to incline to that construction which is most obviously just, and in fulfilment of the meaning of the parties. 1 *Peters*, 465.

To restrict or limit, then, the effect of these general covenants of warranty, short of an assurance against the consequences of a defective title or of any disturbance in the enjoyment of the land conveyed, would create alarm throughout the community. I am fully apprised that the English cases, at least the more ancient of them, and the decisions in many of the States, do not go to this extent. But the contrary doctrine is admitted to be of feudal extraction, and never was received with peculiar favor in this country. Chief Justice Parsons, in *Gore vs. Brazier*, 3 *Mass.* 544, states the rule had been so far relaxed, before the settlement of the colonies, as to allow the tenant ousted by title paramount, to maintain a personal action of covenant broken, on a real covenant of warranty. For myself, I can say with truth, after a practice of more than a quarter of a century, that I never saw a deed containing in so many words, definite and precise covenants of seisin-right to convey—for quiet enjoyment—against incumbrances,

—and for farther assurance. These are all designed to be included in the general covenant of warranty of title against all claims. And to subject our citizens to the technical rules of conveyancing, established and observed in older communities, where real estate is infinitely more valuable, and where conveyancing is a profession, demanding the most profound study and preparation, would be an intolerable hardship. For myself, I am free to confess, that I lack the nerve to attempt it, persuaded, too, as I am, that there is more benefit, every way, to be derived from adhering to the present practice of our Courts, than by seeking to overturn it, and that, too, upon mere technical scruples. The nations of the earth are clamoring for bread, they will be put off no longer with a stone. They ask for *reasons*, they will not be satisfied by *mere precedents*, however hoary with antiquity. It is quite too late in the age of the world, to substitute words for things, sound for sense, the shadow for the substance.

Let us then examine separately, though not very minutely, each of the propositions submitted for our revision, without regard to the order in which they are presented in the record.

1st. Can Leary maintain this suit as assignee? The rule, that the assignee cannot maintain an action, depends upon the doctrine of the Common Law for the avoidance of maintenance, the good sense of which has been very properly questioned. *Master vs. Miller*, 4 *B. and C.* 320. Courts of Equity, from the earliest time, thought it too absurd for them to adopt. The modern tendency, both of legislation and judicial decision, is, to allow the *party in interest* to bring the suit, whoever that may be. At any rate, a rule of such questionable propriety, will not be stretched, to embrace a case not coming within its reason. We believe that the present is a case of that description.

Professor Greenleaf says, the object of covenant's seal, is three-fold. First, To preserve the inheritance. Second, To continue the relation of landlord and tenant. Third, To protect the tenant in the enjoyment of the land. Of *this* class is the covenant to warrant and defend the premises to him and his heirs and assigns, against all lawful claims, &c. When this covenant is broken, after the land has been conveyed to the *assignee*, the general rule is, *that he alone has the right to sue for the damages*. 2 *Green. Ev.* 240.

The Supreme Court of Massachusetts, in *Sprague vs. Baker*,

Leary *vs* Durham.

*(17 Mass. R.* 588,) say, " The actual damages accrued after the assignment. They were sustained by the assignee, and not by the assignor, who has no interest in them, except what arises from his covenant with the plaintiff. But suppose there had been no such covenant ; or suppose the assignor to be insolvent ; then. unless the assignee can maintain the present action, he is without remedy. This, certainly, would not be right, nor do we think that such is the law. It seems to us, that if the present case required a decision upon this point, we might well be warranted in saying, that the covenant against incumbrances passed to the assignee, so as to entitle him to an action for any damages, which he might sustain after the assignment ; because the breach continued, and the ground of damage has been materially enlarged since the assignment. So that the plaintiff's right to sue, does not depend upon the assignment merely of a *chose in action.* He is principally interested in the covenant; and these covenants run with the land in which the owner is solely, or principally, interested, and are necessary for the maintenance of his rights *Covenant lies by the assignee in every covenant which concerns the land,* " citing, *Com. Dig. Covenant B.* 3 *Mod.* 242."

[2.] " But it is unnecessary," continue the Court, " to give a decided opinion upon this point, as we have no doubt the plaintiff is entitled to judgment upon the other covenant. And in the first place, it is observable, that the words of the covenant are, To warrant and defend the premises against the lawful claims and demands of all persons ; and it is agreed that at the time of the grant, there was a claim on the land, by way of mortgage ; that after the assignment, the mortgagee demanded possession of the plaintiff, or the payment of the debt due on the mortgage ; and that he, to avoid a suit with which he was threatened, and against which he could not defend himself, paid the sum due on the mortgage. *Against this claim, therefore, Baker (Durham) has not defended him according to the express words of the covenant.*"

In the case under discussion, it will be observed, that Durham, the defendant, expressly covenants, not only to protect Lofton, but likewise his heirs and *assigns,* in the enjoyment of the land. How can it be contended, then, that the covenant was made for the benefit of the grantee only? Independent of the general doctrine, we might safely rest this decision upon the words of the covenant itself, which are extended to the *assigns* of Lofton. In

such a case, it is just as much intended for the security of all subsequent grantees, as the immediate parties to the instrument. And the *last*, principally, because he is the first and greatest sufferer.   By considering such a covenant as annexed to and running with the land, so long as it remains in the possession of the covenantee, it ceases to be a dead letter.   It will constitute a valuable security to every subsequent grantee.

"If," say the Supreme Court of Ohio, in *Foote vs. Burnet*, already quoted, "the first grantee continued in possession of the land, while his title remains undisturbed, and conveys to a subsequent grantee, in whose time an outstanding incumbrance is enforced against the land, justice requires that this subsequent grantee should have the benefit of this covenant against incumbrances, to indemnify himself."

2d.  It is insisted that there was no breach of the warranty of the title in fee, the fee being still in the plaintiff, with a mere incumbrance of dower for life.   It may be true, that the *fee* is not molested; but is not the *title* disturbed when an estate for life is carved out of the premises?   Would a bond for titles be satisfied by the tender of a title incumbered with dower?   The covenant of warranty in Durham's deed is of the *title*.   And what is title? "It is the means whereby the owner of land hath the just *possession* of his property."  2 *B. Com.*196.   If the owner be expelled from one third of his land during the life-time of the dowager, is this no breach of the warranty of *title?*   I should *feel* it to be such, were I the unfortunate purchaser; and highly as we respect the decisions of our brother Scarborough, and much as we regret now, and at all times, to differ from him as well as the rest of our brethren of the Circuit Bench, nevertheless, we are constrained to take somewhat of a different view of this covenant.

3d.  This ground has already been anticipated.   It affirms that the deed from Durham to Lofton, contains no warranty against incumbrances, and that dower is an incumbrance.   Our position is, that the covenant in this deed, is in effect, a covenant of *freedom from incumbrances*; and that it is broken by any evidence showing that a third person has a right to or interest in the land granted, to the diminution of the value of the land, though consistent with the passing of the fee by the deed of conveyance.   2 *Green. Ev.* 242.   *Prescott vs. Furman*, 4 *Mass.* 627, 629.

4th.  It only remains to consider whether eviction be necessary

to the maintenance of this action, and if so, does not the proof establish what is tantamount to an eviction?

By the Act of 1824 authorizing the Superior Courts of this State to assign and set off dower, *(Prince,* 459,) the right of the applicant is first ascertained.   Next, commissioners are appointed to *enter upon the land and tenements,* and with the assistance of a surveyor, if necessary, to admeasure and lay off the part or share to which, by the laws of this State, the applicant is entitled; the proceedings are returned to the next term of the Superior Court, after the writ issues, and are made by the judgment thereof final and conclusive, between all the parties concerned, unless some person interested shall show good and probable cause in bar, of the confirmation of such assignment.   And a writ of possession is directed to be issued by the Clerk, upon the application of the person to whom dower is so assigned.   All of this has been done in the present Case, except that the record furnishes no evidence that a writ of possession has ever issued.   The legal presumption is, that none was needed, and that the tenant surrendered voluntarily.   The witnesses testify that Leary, the plaintiff, has been injured some four or five hundred dollars.   We think that the case should have been submitted to the Jury.   After the judgment of confirmation, by the Court, not only the actual, but the market value of the premises has diminished to the extent of the worth of the dower.   The tenant would have subjected himself to the payment of rent, by holding over.   The judgment of the Court had settled the fact, that there was an outstanding and better title than Durham's, to a portion of this land.   The existence of this claim was an incumbrance, ascertained and fixed by law, and was, in our opinion, such a breach of the warranty as to authorize a suit: not to recover nominal damages only, but indemnity for the actual injury incurred.   If the formal entry of a mortgage for foreclosure, though made under a Statute which does not require that the possession of the mortgagee should be continued, is a breach, *(3 Mit.* 81.   2 *Ib.* 510.   9 *Mass. R.* 495.   16 *Peck,* 56,) the conclusion is irresistible, that the proceedings in this claim of dower, would sustain the present suit.

The case of *MacKey vs. Ex'rs, of Collins,* 2 *Nott and McCord,* 186, is very similar to that at bar.   The defendant, by deed, sold to the plaintiff, a tract of land to hold in fee, and by said deed

bound himself, his heirs, executors, &c., to warrant, and forever defend the premises to the plaintiff, his heirs, &c., against every person whomsoever, lawfully claiming, or to claim the same or any part thereof. The grantee brought an action of covenant upon this warranty, alleging, as the breach, that Collins, the grantor, was not the owner of the land; but that the same belonged to one Jesse Baker, who then lawfully claimed the same. Mr. Justice Gantt, before whom the action was tried, ordered a nonsuit, on the ground, that an action could not be maintained until there had been a legal eviction by an action at law. A motion was made to set aside the nonsuit, on the ground that it was in effect a covenant of seisin and not for quiet enjoyment, and therefore, an eviction was not necessary. And that even if it was to be considered a covenant for quiet enjoyment, still the action ought to have been supported.

Mr. Justice Nott, who delivered the opinion of the Court of Appeals, admitted that the covenant in the deed was not in express terms either a covenant of seisin or for quiet enjoyment. Still he considered it a covenant for *good title* and for the *whole quantity*; and that the action of covenant would lie without eviction. Indeed, he remarks that this doctrine, as to the liberal interpretation of these covenants, has become so deeply engrafted into the jurisprudence of that State, that to extirpate it, would be attended with mischief, little less than the abolition of the first rule of evidence.

The old rule of requiring the subsequent purchaser to hold on till ousted by judgment of a Court, is now exploded. It went upon the presumption that a legal investigation was necessary to determine in whom the legal estate was. But this doctrine is now repudiated as being at war with the principles of justice. The honest purchaser might in this way see his vendor wasting all his effects, or going beyond his reach, without the power of securing himself against that loss, which, sooner or later, he must inevitably suffer. Chief Justice Parsons seems to have stated the law very accurately in *Hamilton vs. Cutts, et al. Ex'rs.* 4 *Mass. R.* 349, he says: " It is true that if the tenant consents to an unlawful ouster, he cannot afterwards be entitled to a remedy for such ouster. But an ouster may be lawful; and in that case, the tenant may yield to a dispossession without losing his remedy on the covenant of warranty, which, in this State, is a personal action of covenant broken. There is no necessity for him to involve himself in a

Leary *vs.* Durham.

law-suit to defend himself against a title, which he is satisfied must ultimately prevail. But he consents at his own peril. If the title to which he has yielded, be not good, he must abide the loss; and in a suit against the warrantor, the burthen of proof will be on the plaintiff, although it would be otherwise in case of an eviction, by force of a judgment at law, with notice of the suit, to the warrantor. For in such a case, unless it be obtained by fraud, the judgment itself will be plenary evidence."

In *Loomis vs. Bedel*, 11 *New Hampshire R.* 82, C. J. Parker, in delivering the opinion of the Court, says: "It seems to be generally settled, that in order to support an action, upon a covenant of warranty, there must be something more than evidence of an outstanding paramount title. There must be an assertion of that title and an ouster or disturbance by means of it. But no technical action by judgment of law is necessary, nor is any resistance of the paramount title, legal or otherwise, required, to the maintenance of an action upon the covenant. It is well settled that an entry under the paramount title, amounts to a breach of a covenant of warranty. And the grantee may, upon demand, surrender the land to a claimant, having a good title, and resort to his action.

The learned Judge notices, with disapprobation, *Waldron vs. McCarty*, 3 *Johns. R.* 464, and then proceeds—"If the claimant holding paramount title, should enter upon the land, and the grantee should thereupon yield up possession, he would immediately have a right of action upon the covenant of warranty in his deed; and this right would not be barred or forfeited, should he forthwith purchase the premises from the claimant, to whose superior title he had thus yielded the possession. He might, on such purchase, immediately re-enter into the possession, and still maintain his action on the covenant. If, instead of this formality, he yields to the claims of a paramount title, and purchases, without any actual entry of the claimant under it, where is the substantial difference? For all practical purposes, his title under the grant, to which the covenant is attached, and under which he originally entered, is as much defeated in the one case as the other. He is, in fact, dispossessed, so far as that title is concerned. He is still in possession, but he is so under another title, adverse and paramount to his former one; and his purchase is, therefore, equivalent to an entry by the claimant. It is an ouster by his

consent, and a re-entry by himself under the superior title, without going through with what would be, at best, a mere formality, where, conscious of the defect of the title under which he originally entered, he chooses to yield peaceably to the asser ion of a better title, and to purchase it.

" The grantor who conveys a defective title, with a covenant of warranty, has no reason to complain of this. No action can be maintained against him upon his covenant in such a case, except upon proof of the actual existence of a title superior to the one he conveyed, and which his grantee could not withstand at law ; and if that proof is made out with evidence that the title was asserted and yielded to, why should he be permitted to insist there must be a formal surrender of the possession, or actual entry, and that if this was not done, there could be no breach of his covenant. How would his interest be benefited by the going out and going back again ?"

These cases, so convincing in their logic wil, shed light upon many a dark passage in the law of warranty. In some of the States, the authorities go so far as to rule that to show paramount title in another person, without eviction, legal or actual, is sufficient, either to defend against the payment of the purchase money, or to receive damages for covenant broken. But we forbear. If there were no such precedents as those relied on in this decision, still we should be inclined to abide by the doctrines which we have now established, believing them, as we do, to be in accordance with the soundest views of right and justice. They are the doctrines, so far as we know, and are informed, which have been heretofore entertained, and enforced by our predecessors of the Circuit Bench. And I am well assured that in following their " *via trita*," in relation to them, we shall find it, I doubt not, a " *via tuta*," not to the present case only, but likewise to our future adjudications.

Let the judgment below be reversed, the nonsuit set aside, and the case re-instated.