Redwine *vs.* Brown *et al.*

---

No. 42.—LEWIS REDWINE, plaintiff in error, *vs.* WM. B. BROWN and others, defendants.

[1.] A previous warrantor of the title, may be made a co-defendant in an action of ejectment, provided he would be answerable in damages, in case of eviction.

[2.] A judgment at Law, cannot be impeached collaterally, in Equity.

[3.] Where land has been conveyed, with covenants of warranty, and the land has passed by subsequent conveyances, through the hands of various covenantees, the last covenantee or assignee, in whose possession the land was when the covenant was broken, has a right of action against any or all of the prior warrantors, whether immediate or remote, for breach of covenant.

[4.] The covenants of seisin and of right to convey, and that the land is free from incumbrance, are personal covenants, not running with the land or passing to the assignee. The covenant of warranty and the covenant for quiet enjoyment, are in the nature of real covenants, and they run with the land conveyed, and descend to heirs, and vest in assignees of the purchaser.

[5.] Does this obstruction exist in this State, where all *choses in action* are assignable ?   *Quere ?*

[6.] The fact that the covenant does not name the assignee, but only covenants to and with A, and not to A and his assigns or assignees, does not prevent B, the assignee of A, from suing.

[7.] An assignee, notwithstanding he has taken a warranty from his immediate bargainer, upon eviction, has a right to sue the original or any intermediate grantor, upon his warranty.

[8.] Upon a conveyance without warranty, all deeds, warranties, covenants and other muniments of title, belong to the grantee as appurtenant and incident to the land granted.

[9.] Real covenants, or such as run with the land, may be assigned as well by a release and quit-claim, as by deed of bargain and sale.

[10.] The assignee, under a Sheriff's sale, is the assignee of the original party—as much so as if the latter had assigned to him directly. It is part of the debtor's "right, *title and interest in the premises.*"

[11.] So too, of an official sale of real estate made by an administrator, under a license from the Ordinary, "*with all the* rights, members and *appurtenances thereto belonging or in anywise appertaining;*" the purchaser is put in the same situation that the intestate was in.

In Equity, in Coweta Superior Court.  Tried before Judge HILL, March Term, 1851.

This bill was filed to enjoin an action of ejectment, for the recovery of lot of land No. 161, in the first district of Coweta County.  The bill alleged, that in the land lottery authorized by the Act of 1825, disposing of the territory lying between the Flint and Chattahoochee rivers, James St. John, one of the defendants, drew the said lot of land, for which a grant issued in 1827 ; that St. John sold and conveyed the land to Michael Madden ; that Madden conveyed it to Giles B. Taylor ; Taylor to Shadrach Perry ; Perry to John Redwine ; John Redwine to Lewis Redwine, the complainant, and the latter to David Dominick, who died, seized of the land ; that the administrator of Dominick, sold the same regularly, to Sterling Elder, who went into possession, and made valuable improvements ; that the deeds were all duly recorded, and contain warranties in the usual form, except the deeds from St. John to Madden, and Madden to Taylor, which contain no warranty.

The bill alleges, that owing to the fact, that the deed from St. John to Madden, is defective in its probate, (having been admitted to record without an affidavit from either of the witnesses,) and the witnesses being dead, complainant is unable to prove the execution of the deed, without an appeal to the conscience of St. John.

That William B. Brown, with full knowledge and actual notice of the facts, has combined with St. John, to defraud and eject Elder, and for some inconsiderable sum, has induced St. John to execute to him a deed to the land ; and that Brown is now using the name of St. John, to recover said land in an action of ejectment against Elder, and in which action complainant was made a co-defendant by order of the Court.

The bill prays that the deed from St. John to Brown, be de-

clared fraudulent and void, and be delivered up to be cancelled, or that Brown be decreed a trustee for Elder, and those under whom he claims, and ordered to convey his title to Elder, and thus quiet his possession; and that the action of ejectment be perpetually enjoined.

Brown filed a demurrer to the bill, with specifications.

The Court sustained the demurrer, and dismissed the bill, and counsel for complainant excepted.

B. H. Hill, for plaintiff in error.

Morgan, for defendant.

*By the Court.*—Lumpkin, J. delivering the opinion.

Lewis Redwine filed his bill in the Superior Court of Coweta County, stating that under the Lottery Act of 1825, disposing of that portion of the territory of Georgia, which lies between the Flint and Chattahoochee rivers, one James St. John drew lot No. 161, in the 1st District of said County, and that the same was granted to him by the State, on the 11th day of October, 1828; that on the 20th of the same month and year, St. John conveyed the land to one Michael Madden; that shortly thereafter, Madden conveyed to one Giles B. Taylor; these deeds contain no covenant of the warranty of title; that in October, 1829, Taylor conveyed with warranty, to one Shadrach Perry; that in June, 1831, Perry conveyed with warranty, to John Redwine; and that John Redwine, in September, 1831, conveyed with warranty, to Lewis Redwine, the complainant; that Lewis Redwine afterwards sold and conveyed the land, with warranty, to one David Dominick, who having died intestate, the land was regularly sold and conveyed by his administrator, to one Sterling Elder; all the deeds were duly recorded in the proper office; that Elder took actual possession of the land, and made valuable improvements thereon. The bill alleges that the title was well known and recognized by all persons, previous to that time. The bill further charges, that one William B. Brown, with a full

and actual notice of all the facts, and especially of the purchase and claim of the said John and Lewis Redwine, as well as the possession of the said Elder, combining with St. John, the grantee, to injure and defraud the complainant, for some nominal or inconsiderable sum, bought the lot of land of the said St. John, and took from him a deed, or some other written conveyance of the property. It alleges. that St. John and Madden are insolvent, and that Madden resides beyond the jurisdiction of the State, so that neither of them can be made answerable in damages for the loss of the land, and that the said confederates are prosecuting an action of ejectment in the name of the said St. John, against the said Elder and the complainant, who was made a co-defendant thereto by order of the Court. The bill further states, that the two witnesses to the deed from St. John to Madden are dead, and that the complainant cannot adduce proof of its execution, without appealing to the conscience of the said St. John. The bill prays that the deed from St. John to Brown, may be decreed to be fraudulent and void, and delivered up to be cancelled, or that Brown be adjudged to be a trustee for the said Elder or the complainant, and be compelled to convey to Elder, and that the action of ejectment may be perpetually enjoined.

To this bill, Brown filed a general demurrer, for want of equity, with specifications. The Court sustained the demurrer, and ordered the bill to be dismissed on two grounds, to wit:

1st. Because Lewis Redwine, not being the *landlord* of Elder, he ought not to have been made a co-defendant in the action at Law.

2dly. Because Elder, having purchased at administrator's sale, under the doctrine of *caveat emptor*, and because the administrator could make no assignment of the warranty from Redwine to Dominick, would not be liable to Elder, in case of eviction, and consequently had no such interest as would entitle him to maintain the bill; whereupon, complainant, by his counsel, excepted.

Three questions are made by the record:

Redwine *vs.* Brown *et al.*

1st. Was Lewis Redwine properly made a co-defendant in the ejectment?

2dly. Could the order making him a co-defendant, be impeached by demurrer to the bill?

3rdly. Had Lewis Redwine such an interest in the subject matter, as would enable him to apply to a Court of Equity for relief?

[1.] The first question will be answered by the construction to be given to the Act of *II. Geo.* 2 *Ch.* 19, passed A. D. 1738, to prevent frauds by tenants. (*See Schley's Digest,* 374.) By the 13th section of this Act, *landlords* are empowered to make themselves defendants, by joining with the tenants. Does this provision embrace previous warrantors of the title, who would be liable for damages in case of eviction?

The uniform practice in this State, has been to allow all such to come in and defend; and it orginated no doubt, in the decision made by the Court of King's Bench in England, upon that Statute, as early as 1762, in which, after mature consideration, the term *landlord,* was extended beyond its strict import, and made to include every person whose title is connected to or consistent with the possession of the occupier, and which would be divested or disturbed by any claim adverse to such possession. *Fairclaim ex dismiss, Fowler et al. vs. Shamtotle,* 3 *Burrows' Rep.* 1290.

In conformity with this explanation of the Statute, remaindermen, devisees in trust, mortgagees and infants, and "*all other proper persons,*" to use the language of one of the laws, have been admitted to defend. Nor do we see any inconvenience or injustice that is likely to result from this exposition of the enactment. Lord Mansfield assigned this very satisfactory reason for its adoption; that where there is a privity of interest, *letting in the person behind,* may operate to prevent treachery and confusion.

By making himself a party, the warrantor cannot urge as a defence any. matter which the law did not previously recognize as available, to defeat a recovery by the plaintiff. The construction does not affect the parties' rights; it relates only to the rem-

edy; in fact it affects nothing more than the substitution of one defendant or tenant for another.

Mr. Justice Wilmot, in the case just cited, observed that it was very remarkable that the different Acts of Parliament had been made at near 500 years distance upon the very same subject, when there was no occasion for either, viz: the Statute of *Westminster*, 2 *ch.* 3, (13 *Ed. I. A. D.* 1285,) *and this Act of II. Geo.* 2 *ch.* 19. The *first* of these he said, was no *new* provision; for before that time *all those that stood behind the tenant in possession* had always a right *at Common Law* to come in and be received, *pro interesse suo*, to defend the possession, which was very material to them, and by the change whereof, they would have been greatly incommoded, and he refers to *Coke's Inst. v.* 2, 344, 345, *and Braeton, lib.* 5, *fo.* 393, *b.*

And Lord Mansfield during the progress of the argument, asked the Court on both sides, if they had found any case prior to that of *Goodright vs. Hart, et. ux.* 2 *Strange*, 830, 2 *Geo. II.* where the Court had refused to let in persons *who stood behind the tenant in possession*, to defend, *pro interesse suo*, in the stead of the tenant in possession? And they all answered, "*none* at all."

It would seem, therefore, that the practice had always been in England, as is contended for by the counsel for the plaintiffs in error, and that it was this "hasty" adjudication reported by Sir *John Shorry*, where the Court refused to permit *Hart and wife* to be made co-defendants, because the tenant in possession would enter no appearance or make any defence, which occasioned the clause in the Act of Parliament which we have been considering, and which was construed by the Courts in the spirit of the liberal practice which had previously obtained.

[2.] Having ruled the first point in favor of the plaintiff in error, it is unnecessary to advert to the second, except to say, that had our judgment upon the first point been the other way, we are clear that the order making Lewis Redwine a party to the ejectment, could not be set aside in Equity, on demurrer to the bill. To allow it, would be to involve the two jurisdictions in inextricable difficulties and confusion.

[3.] But the last and main question is, has Lewis Redwine

such an interest as to authorize him to maintain this bill? The decision will protect him in any event, for he can only be turned out of Chancery, for the reason that he is not liable over to Elder, in case Elder is evicted.

In *Leary vs. Durham*, 4 *Geo. Rep.* 593, this Court held, that where land has been conveyed with covenants of warranty, and the land has passed by subsequent conveyances, through the hands of various covenantors, the last covenantee or assignee in whose possession the land was when the covenant was broken, may sue for a breach of the covenant, and he had a right of action against the original warrantor. Further examination has but served to strengthen our conviction of the soundness of that opinion. Doubts, I know, have been entertained in relation to the subject, and it has been held, that the grantee, on failure of title, is confined in his remedy to the immediate covenant to himself.

But this question has been settled, in cases which were thoroughly discussed and considered, and it is now well established both on principle and authority, that the right of action passes to the last covenantee or assignee, and that he may proscribe any work of the prior covenantors until he has obtained satisfaction. 5 *Cowper*, 137. *Withy vs. Menford*, 10 *Wend.* 180. *Suydam vs. Jones*, 1 *Conn. R. N. S.* 244. *Booth vs. Starr*, 12 *Mass. R.* 304. *Wyman vs. Ballard*, 1 *Fair*. 91. *Griffin vs. Fairbrother*, 1 *Aiken*, 233. *Williams vs. Wetherbee*, 1 *Dev. and Bat.* 94. *Markland vs. Camp*, 3 *Barn. and Ald.* 392. *Campbell vs. Lewis*, 1 *Maule and Selwyn*, 355. *Kingdon, executor, &c. vs. Nottle*, 4 *Ibid*, 53. *Kingdon, devisee, vs. Nottle*, 5 *Taunt.* 418. *King vs. Jones*, 4 *Bibb's R.* 225. *Bradford vs. Long*, 3 *Bibb's R.* 173. *Broker vs. Bell*, 3 *Marshall's R.* 223, '4. *Berry vs. Home*, 1 *Littell's R.* 376. *Lott vs. Parish.*

[4.] Chancellor Kent says, that the assignee or purchaser of a covenant of warranty, running with the land, who is evicted, may sue any one or more of the covenantees, whether immediate or remote. 4 *Kent's Com.* 471, *note.* And he regrets that the technical scruple, that a *chose in action* is not assignable, prevents the same rule from applying to the assignee of personal

covenants, as well as real, viz: to covenants of seisin and of a right to convey, and that the land is free from incumbrances, as well as the covenants of warranty, and of quiet enjoyment. He very properly remarks that he is the most interested and the most fit person to claim the indemnity secured by these covenants, for the compensation belongs to him as the last purchaser and first sufferer. *Ibid.*

[5.] I would barely suggest the inquiry, does the reason for not allowing the covenantee to sue for a breach of personal covenants, apply in this State, where our legislation is so literal in favor of the assignability of *choses in action* ?

[6.] Nor is it necessary to name the assignee, to enable him to sue on a real covenant. If the grantor covenants to and with the grantee, instead of to and with the grantee and *his assigns* or *assignees*, still the latter can sue—the covenant running with the land, being inherent in it. The omission makes no difference so far as the right of action is concerned. *Platt on Cov.* 523. (3 *Law Lib.* 234.) *Sugd. Vend.* 400.

But while the general doctrine will not perhaps be seriously disputed, that the vendee with general warranty, by the mere act of purchase, becomes assignee of the covenants of general warranty, taken by his vendor for his security; in other words, while it is admitted generally to be true, that the vendee, with general warranty, is the assignee of every remote warrantor's title, and of the title of any person from whom his vendor may have purchased, still it is insisted that the present case does not fall within this principle; and for the reason assigned in the judgment below upon the demurrer, namely, that the administrator of Dominick could make no assignment to Elder of the warranty of Redwine, to his intestate, and that therefore Redwine would not be liable over to Elder in case of eviction.

This opinion rests upon the idea that the administrator could not, by his covenant of warranty, bind the estate which he represented, and that this *hiatus* in the claim of covenants, would prevent the purchaser from having his remedy over. But this exception is not sustained, either by reason or by authority.

It is worthy of notice, that in several Courts where this sub-

ject has been discussed, that the general rule which I have stated, applied *only* where the land comes to the assignee without warranty of title.

[7.] It was argued, and not without some plausibility, that where the bargainee takes a warranty from his immediate bargainor, he thereby deprives himself of the right of resorting to the remote grantor; and in *Kane vs. Langan,* (14 *Johns. R.* 89,) *Ch. J. Spencer,* though not as a point involved in that case, does intimate that such a distinction exists, and for his authority cites the *Bickford vs. Page,* 2 *Mass. R.* 460. But that case, so far from sustaining this position, is a precedent against it; and afterwards, in New York, where the question came directly before the Supreme Court, it was ruled that this doctrine of Chief Justice *Spencer,* was not law, and that the decision in *Bickford vs. Page,* warranted no such conclusion. *Garlock vs. Closs,* 5 *Cow. R.* 143. See also, *Nibbs vs. Sontill,* 7 *Mass. R.* 444.

[8.] But the very reverse of this proposition is contended for here; that is, that unless the assignee has a warranty from his immediate bargainor, he has no right to sue the original grantor or any intermediate covenantor, in case of eviction.

We apprehend that this position will be found to be equally untenable.

What did the administrator of David Dominick, deceased, convey to Elder? Lot of land, No. 161, in the 1st District of Coweta County, "with all the rights, members and appurtenances thereto belonging or in anywise appertaining," &c. It is not therefore because of a covenant of warranty, that Elder becomes the assignee of the previous covenants, but because he takes the same estate and stands in the place of his vendor's intestate, and thus a privity of estate is created. 4 *Cruise's Dig.* 316.

The character of the estate, say the Supreme Court of Tennessee, in *Hopkins vs. Lane,* 9 *Yerg.* 79, which may be transferred by a deed, is not affected by the existence or non-existence of a covenant of warranty. If, by the terms of the conveyance, the same estate which had been conveyed to the second vendor,

Redwine *vs.* Brown *et al.*

be transferred to his purchaser, he becomes assignee by force of the *conveyance merely* of the covenant of warranty, and as such, may maintain an action on the covenant, against the warrantor.

[9.] In *Beddoe vs. Wodsworth*, 21 *Wend.* 120, it was held that such covenants may be assigned, as well by a *release* and *quit-claim*, as by deed of bargain and sale, or lease and release.

[10.] In *White vs. Whitney*, 3 *Met. R.* 81, one of the questions was, whether by a Sheriff's deed, the purchaser of land became the assignee in law, of the defendant in execution's covenant? It was held that he did. Ch. Justice *Shaw* asks what was the legal effect and operation of the deed? This question is in effect answered by the views already stated, showing that the covenant was in effect, *parcel of the debtor's estate.* If it was, then, by force of the Statute, it passed with the estate to the purchaser. It was a covenant incident to the estate ; made for its security and protection ; beneficial to the person to whom the estate should come, but to no other. It was a part of the debtor's "right, title and interest in the premises."

In *Spencer's Case*, 5 *Coke*, 17, *5th res.* it is said that a tenant by Statute merchant or Statute staple, or elegit of a term, and he to whom a lease for years is sold on execution, shall have an action on a covenant annexed to the land, *although they come to the term by act in law.* And in South Carolina it has been decided that a covenant running with the land, passes by a Sheriff's sale to the purchaser. *McCrady vs. Brisbane*, 1 *Nott & McCord*, 104. *See also* 1 *Esp. N. P.* 150, 2 *pt. Gould's ed.*

[11.] These cases are extremely analogous in principle to the one at bar. Indeed we are unable to draw any distinction.

In *Hodges and Saunders*, 17 *Pick. R.* 470, the question was raised as to what passed by an administrator's sale, under a license of Court, where the conveyance contained no covenant for the validity of the title, and the Court say, "That the administrator has the power, in the largest possible terms, to sell the estate ; but he is not bound to warrant, except the regularity of his own acts. *The* purchaser is to be put in the same situation that the intestate was in. The title of the heir is divested and

the purchaser is substituted in his place.   We think the admin-
istrator is authorized and bound to do any act which may be
necessary to vest the title in the purchaser, *in the most beneficial
form* "  The Court add,  " It was  early  held, upon  the fullest
consideration, that upon a conveyance without warranty, all deeds,
*warranties, covenants* and muniments of title belong to the gran-
tee *as appurtenant and incident to the land granted.*  This is found-
ed  upon the  very plain and intelligible principle  that they are
beneficial  to the grantee, but useless  to the grantor."  *Buck-
hurst's Case*, 1 *Coke* 1.

Finding such a concurrence of authority, English and Ameri-
can, upon this point, and not a solitary doctrine to the contrary,
we deem it useless  to extend this examination  further.   We
are all well satisfied that in case Elder should  lose this land, he
would be  entitled to  go back upon  Lewis Redwine, upon his
covenant of warranty to David Dominick, and that consequently
he  is  *rectus in curia*  as complainant in the  bill,  seeking  to
have the incumbrance over the title removed.

The judgment below must be reversed.