## TUCKER v. McARTHUR, administratrix.

1. Under the laws of this State, unless the covenant expressly negatives such transmission, a covenant of warranty of title, of quiet enjoyment, and of freedom from incumbrances, made by any grantor, passes with the land to subsequent purchasers.
2. While at common law such a covenant, after breach· in the hands of the covenantee, did not pass because it was then a mere chose in action and therefore not assignable, this rule is changed by our legislation under which choses in action are made assignable. Accordingly, it was in the present case error to sustain a demurrer to a petition filed by the grantee of the covenantee to recover damages from the original grantor for a breach of his warranty of title, on the ground that the covenant did not pass to the plaintiff.

Argued October 25, 1897.—Decided February 28, 1898.

Action for damages. Before Judge Smith. Montgomery superior court. April term, 1897.

*DeLacy & Bishop* and *R. Hobbs*, for plaintiff.
*J. E. Wooten* and *Roberts & Smith*, for defendant.

LITTLE, J. The question for adjudication which arises in this case grows out of the following state of facts. On the 23d

day of August, 1882, McArthur by deed conveyed to Alford title to certain lots of land, viz., Nos. 27, 44, 61, 81, 141, 165, 205, 239, 327, 364 and 461, in the eighth district of Colquitt county, Georgia, in which deed of conveyance McArthur made a general warranty of title. At the time of the conveyance McArthur was not, nor does it appear from the record that he ever was, in possession of the land conveyed. Alford did not take possession of the land, but only held the title which McArthur had conveyed to him, until January 1, 1891, when he sold the land to Tucker and executed a deed purporting to convey title to the latter, which also contained a general warranty of title. Subsequently Tucker attempted to take possession ; but finding other persons in possession, he instituted actions of ejectment in the superior court of Colquitt county to recover the land, and notified McArthur to produce evidence of title to the same. McArthur furnished no evidence of title, and Tucker failed in his several suits, the evidence on the trial of such actions in ejectment showing a good title in the respective parties who were in possession. After the termination of those cases, Tucker instituted his action against McArthur to recover damages for a breach of the warranty of title which McArthur had made to Alford, claiming that such warranty was a covenant running with the land, and that he, being the grantee of the original covenantee, had a right to recover from the original covenantor. To the petition setting out these facts McArthur demurred; the court sustained the demurrer and dismissed the action, to which judgment Tucker excepted and brings this ruling of the court here to be considered. The contention of McArthur is, that inasmuch as at the time of making the conveyance he had neither the title to, nor possession of, the land, he could and did not convey to Alford any estate in the land by his deed of conveyance, and that this being true, there was a breach of his covenant of warranty at the time his deed was executed, and the right in Alford to bring his action for such breach was perfect and complete; that such right then became a chose in action, and that when subsequently Alford conveyed the land to Tucker with warranty of title, the covenant of warranty made by McArthur to Alford did not pass to Tucker as a covenant

running with the land, and he had no right of recovery for a breach thereof. This contention of the defendant in error was strongly and ably argued by his counsel before this court, and numerous authorities were cited to maintain the correctness of his propositions. The question involved is not a new one to the English courts, nor to some in this country, but so far as we have been able to ascertain, it has never been passed upon by this court, at least in the form in which it is now presented here; and we shall proceed to discuss the question in the light of the English law, and such provisions of our own statutes as may be found applicable.

Mr. Rawle in his work on Covenants for Title (p. 301) lays down the rule on this subject in the following language: "It is a settled rule on both sides of the Atlantic, that *until breach* the covenants for title, without distinction between them, run with the land to heirs and assigns." He further says, "But while this is well settled, a strong current of American authority has set in favor of the position that the covenants for seisin, for right to convey, and perhaps against incumbrances, are what are called covenants in præsenti—if broken at all, their breach occurs at the moment of their creation. The covenant is that a particular state of things exists at that time, and if this be not true, the delivery of the deed which contains such a covenant causes an instant breach; these covenants are then, it is held, turned into a mere right of action, which is not assignable at law, which can be taken advantage of only by the covenantee or his personal representatives, and can neither pass to an heir, a devisee, nor a subsequent purchaser." In volume 19 of the American & English Encyclopædia of Law, page 997, note 2, a large number of authorities are cited to establish the doctrine, that after a breach a covenant is a mere claim, a chose in action, incapable of transmission or descent, and to be sued upon by the executor or administrator for the breach occurring in the covenantee's lifetime. Further it seems to be well established, that in order for covenants to pass with the land there must in fact be a conveyance of some estate to which the covenant is incident, and that if no estate really passes by the deed which contains the covenant, no subsequent conveyance

by the grantee thereunder can transfer such covenants.  4 B.
& P. 162;  8 East, 487;  6 M. & W. 654;  1 Blackf. 148;  14 Pick.
167; 3 Rand. (Va.) 396; 4 Vt. 471; and see also 24 *Ga.* 533.  The
remedy of the assignee in such a case is in a court of equity.
1 Dev. Eq. 30; 8 Gratt. 353.  Under this principle of law, it was -
for a long time held in England that possession of the land
alone by the grantor was not such a title in him as sufficed to
make the covenants in a conveyance of an invalid title run with
the land.  4 B. & P. 162.  But this doctrine was not adhered to in
subsequent cases; and it may now be understood as established
that where possession is acquired under a grant, it carries the cov-
enants with it, because possession of land is, in an imperfect de-
gree, title, and covenants of warranty and for quiet enjoyment
are not broken until possession is disturbed.   Rawle, Covenants
for Title, 367, 368.

The English cases seem clearly to establish the following
rules governing the question: (1) Covenants incident to the
enjoyment and ownership of an estate run with the land so as
to enable a subsequent grantee, between whom and the original
grantor there was a privity of estate, to enforce the grantor's
covenant in his own name in a court of law, only so long as
the covenant remains unbroken.   (2) After breach, the cove-
nant became a chose in action and did not pass to an assignee.
(3) If the grantor is not in possession, but the land is held ad-
versely to him at the time of his conveyance, his covenant
of seisin is at once broken, and the deed is void as a muni-
ment of title.   The first of these rules has for its foundation
the doctrine that real covenants run with the land because
of a privity of estate between the original grantor and the
grantee of the first covenantee.   This fiction, if it may be
so called, in reference to privity of estate, can not anywhere
apply unless the original grantor had title, or was at least in
possession, because under the common law the deed to lands
made by one not in possession was void.   Being so, no estate
in the lands passed to the last grantee, and as no interest in
the lands passed, there could be no covenant of the first grantor
which passed, because in its nature it attaches or runs only with
an estate which passes by the deed.   Considered as a matter of

contract purely, there could not be held to exist any privity between a purchaser from the grantee and the grantor, nor could such purchaser acquire any rights by assignment which the common-law courts would recognize. As a matter of natural justice, much might be said in favor of the rights of a purchaser of land to require a covenantor to keep the terms of his undertaking made expressly for the protection of the grantee's assignees. But how a right arising solely upon contract, and incapable of assignment, could pass as an incident or incorporeal appendage to land, the subject-matter of such contract, is not clear. Appreciating the fallacy of the common-law rule in this regard, the courts of equity gave relief upon the broad and only rational ground, that the real party at interest and the only one sustaining substantial damage could bring an action for breach of covenant intended for his protection, though there was no privity of contract between him and the covenantor, and latterly where a subsequent purchaser was cut off by the common-law rule from bringing an action against the original grantee, the common-law courts allowed him to use the name of the covenantee for the purpose of prosecuting his action. Rawle, Covenants for Title, 357.

This court has incidentally referred to the question under consideration, and given expression to views which it might be well to consider at this point. In the first case (*Leary* v. *Durham*, 4 *Ga.* 602), it was said by Lumpkin, J.: "The rule that the assignee can not maintain an action depends upon the doctrine of the common law for the avoidance of maintenance, the good sense of which has been very properly questioned. *Master* v. *Miller*, 4 B. & C. 320. Courts of equity, from the earliest time, thought it too absurd for them to adopt. The modern tendency, both of legislation and judicial decision, is to allow the party in interest to bring the suit, whoever that may be." In that case the assignee was allowed to recover for the breach of a covenant against incumbrances usually regarded in this country as merely a personal covenant, not running with the land, because, if broken at all, the breach occurs immediately upon delivery of the deed. Again in *Redwine* v. *Brown*, 10 *Ga.* 317, 318, Judge Lumpkin touched upon the

matter as follows: "Chancellor Kent says, that the assignee or purchaser of a covenant of warranty, running with the land, who is evicted, may sue any one or more of the covenantees, whether immediate or remote. 4 Kent's Com. 471, note. And he regrets that the technical scruple, that a chose in action is not assignable, prevents the same rule from applying to the assignee of personal covenants, as well as real, viz.: to covenants of seisin and of a right to convey, and that the land is free from incumbrances, as well as the covenants of warranty and of quiet enjoyment. He very properly remarks that he is the most interested and the most fit person to claim the indemnity secured by these covenants, for the compensation belongs to him as the last purchaser and first sufferer." In *Martin* v. *Gordon*, 24 *Ga.* 533, Benning, Judge, in his concurring opinion, referred to and cited cases in support of the English rule that covenants would pass to a subsequent purchaser only where there was a privity in estate between him and the covenantor, and that where no land passed by the conveyance for the want of title in the original covenantor, such privity did not exist. He even went further and expressed as his opinion that such was the law in force in this State, although the point was not really involved. The opinion of the court, rendered by Lumpkin, Judge, treated of the only question which was presented, viz.: the measure of damages which could be recovered in a suit brought by a grantee of the covenantee. Even were it otherwise, the case could not be held as authority to control this, because it was rendered by only two Justices. McDonald, Judge, dissented from the opinion of the court in their judgment on the real question involved. The last to be considered is the case of *Durand* v. *Williams*, 53 *Ga.* 76. It there appeared that the defendant was not in possession when he conveyed to the plaintiff, but that the land was in the adverse possession of a third person holding under a paramount title. The only question which was raised in that case was, did the plaintiff bring his action in time, or was it barred under the provisions of the act of 1869? The question here presented was not involved in that case, although Warner, C. J., in his argument, goes to the extent of what rights the plain-

tiff's vendee could assert by reason of the conveyance to him. This point not being involved as a question made in the record, the case can not be considered as authority to the contrary of the proposition which we have announced.

The contention of the defendant in error is borne out by the decisions of the English courts, and by a number of authorities in this country. Of the latter, many are based on the common law, and a few have reference to statutes. But in view of the very broad provisions of our code, we are clearly of the opinion, that not only is the common-law rule changed, but that the reasons which existed as the basis for that rule are met by express enactments of our legislature establishing the propositions, that it is not necessary that privity of estate should exist between the original covenantor and the purchaser from the covenantee, in order to create covenants which run with the land, and that choses in action are assignable. But whatever may have been the established rules of law of the English courts, when the provisions of our statute are applied to the question in issue, the result will be found to be different. When the Code of 1863 was adopted, it was expressly provided that "The purchaser of lands obtains with the title, however conveyed to him, at public or private sale, *all the rights* which any former owner of the land, under which he claims, may have had by virtue of any covenants of warranty of title, or of quiet enjoyment, or of freedom from incumbrances, contained in the conveyance from any former grantor, unless the transmission of such covenants with the land is expressly negatived in the covenant itself." The same provision will be found incorporated in our Civil Code, § 3612. Under this declared rule, it will be observed that the purchaser is put in the place of the covenantee, that from the fact of the purchase he obtains all the rights the latter may have had by virtue of any covenants of warranty of title, etc., and the only way to prevent the transmission of such rights to the purchaser is to expressly negative the transfer in the covenant itself. In the present case the warranty of title is general. Nevertheless the purchaser acquires the right to enforce personal as well as real covenants; for it is provided in the Civil Code, § 3614, that

"A general warranty of title against the claims of all persons includes in itself covenants of a right to sell, and of quiet enjoyment, and of freedom from incumbrances." Under this provision it must be the effect, that the technical rule of the common law which limited the assignee to real covenants is abolished. One of the reasons for such rule, being that when broken the covenant became a chose in action, which was not transferable, can not have any effect in this State, because our Civil Code, § 3077, declares: "All choses in action arising upon contract may be assigned so as to vest the title in the assignee." The mode of transfer of the covenantee's rights in regard to covenants is by deed. The question necessarily arises, therefore, whether anything passed to the plaintiff by the deed in this case. His grantor was not in possession at the time it was made. If it was void for this reason, no assignment of the covenants would result, nor any interest whatever pass. By express legislative enactment in 1859 it was declared that a deed to lands, made while the land was held adversely to the maker of the deed, is not void. Civil Code, § 3605. This section of the code changes the rule of the common law and of the statute of Henry VIII.; and in determining the rights of the plaintiff in this case, that element which might control a decision at common law has no effect in our State. The only exception, of which we are aware, to this provision of the code is, that an administrator "can not sell property held adversely to the estate, but must first recover possession." Civil Code, § 3457. The fact that the grantor was out of possession would not in this case amount to a breach of the covenant for seisin, for the obvious reason that the covenant of warranty was general, and the effect of a general warranty is merely to covenant for "a right to sell, and of quiet enjoyment, and of freedom from incumbrances." Civil Code, § 3614. It is possible that this section of the code was framed in view of the provisions of the act of 1859, which gave a right to sell lands held adversely to the maker of the deed, and where such was done there could not be held any intent for the maker to covenant that he was at the time of the conveyance lawfully seized.

In view of what has been said, it is clear that the reason for

the common-law rule, that covenants run with the land only until breach,—that is, that a covenant when broken becomes a mere chose in action and incapable of being transferred to another,—does not exist in this State. On the contrary, we find the enactment of the statute to be that even personal covenants can be transmitted to a purchaser from the covenantee. It must also follow from what has been said, that it is not necessary that there should be any privity in estate between the parties, as existed at the common law. In effect this State has adopted the equity rule, that when a covenantee by deed conveys all his rights, title and interest in and to a given estate in lands, covenants real and personal made to him by his grantor pass to the purchaser and are capable of being enforced in the name of such purchaser as the real party at interest, notwithstanding there is no privity of contract between the original covenantor and such purchaser. It is but carrying into effect the intent and purpose manifested by the contract between the covenantor and covenantee when the deed expressly warrants the land to the latter, and to his heirs and assigns. We base our ruling in the case on the provisions of our statute; and applying them, as herein construed, it follows that the judgment of the court below must be

*Reversed. Argued before Lewis, J., became a member of the court. The other Justices concurred.*